# DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. CROIX

| UNITED STATES OF AMERICA and | ) |
|---|---|
| PEOPLE OF THE VIRGIN ISLANDS, | ) |
| | ) |
| v. | ) |
| | ) Criminal Action No. 2011-023 |
| RAHEEM LOUIS, | ) |
| | ) |
| Defendant. | ) |

**Attorneys:**
**Rhonda Williams-Henry, Esq.,**
**Alphonso Andrews, Esq.,**
St. Croix, U.S.V.I.
*For the United States and the Virgin Islands*

**Yvette Ross-Edwards, Esq.,**
St. Croix, U.S.V.I.
*For the Defendant Raheem Louis*

## MEMORANDUM OPINION AND ORDER

**Lewis, District Judge**

THIS MATTER is before the Court on the Government's "Motion in Limine Re: Admission of Video Recording," which was filed on Saturday, December 10, 2011. (Dkt. No. 33). By this motion, the Government seeks a finding by the Court that a video it intends to use during its case-in-chief (Government Exhibit 20A), as well as five clips derived from that video (Government Exhibit 20B(1)-(5)), are authentic within the meaning of Federal Rule of Evidence 901. An evidentiary hearing was held on this Motion on December 12, 2011; Defendant filed his opposition to the motion on the morning of December 13, 2011; and the Government filed a

reply memorandum on the afternoon of December 13, 2011. For the reasons that follow, the Court denies, without prejudice, the Government's motion for an order finding that it has properly authenticated Government Exhibits 20A and 20B(1), (2), & (4).

## I. BACKGROUND

### A. Procedural History

The trial of this matter was scheduled to begin on Monday, December 12, 2011. On Friday, December 9, 2011, the Government filed a Motion to Continue Trial, wherein it explained that it intended to introduce certain video surveillance footage of one of the crime scenes in this case during its case-in-chief, but was seeking a continuance because Mr. Soto,[1] the witness who retrieved and could thus authenticate the video footage, would be medically unavailable on the dates scheduled for trial. (Dkt. No. 29). The Government claimed that the video footage is important because it would corroborate testimony of several witnesses and is evidence of the unauthorized use and possession of the vehicle—a blue Jeep Compass—allegedly stolen by the Defendant.

In a telephonic conference call with counsel for the Government and the Defendant in the late afternoon of Friday, December 9, 2011, Defendant's counsel indicated that Defendant objected to the requested continuance. The Court stated that it was inclined to continue the trial one day to December 13, 2011, so that it could hear argument on the record on the Government's Motion to Continue Trial. Both the Government and the Defendant indicated their assent to the Court's proposal. In addition, the Government stated that it was investigating whether there was

---

[1] The Government did not identify Mr. Soto by name in its Motion to Continue Trial. However, at the December 12, 2011 evidentiary hearing, a witness testified that Mr. Soto was the individual who retrieved the footage from the video surveillance system at the Catherine's Rest Supermarket, one of the alleged crime scenes in this case.

2

an alternative means of authenticating the video and that it would file a brief on this issue on Saturday, December 10, 2011. The Defendant stated that it would respond to the Government's filing on Sunday, December 11, 2011.

In the early evening of December 9, 2011, the Court issued an Order continuing the trial to Tuesday, December 13, 2011, and scheduling a hearing on the Government's Motion to Continue Trial for Monday, December 12, 2011. The Court also ordered that the Government file a brief regarding its proposed alternative means of authenticating the video by 4 p.m. on Saturday, December 10, 2011. Similarly, the Defendant was ordered to file briefs by 4 p.m. on Sunday, December 11, 2011, regarding his grounds for objecting to the Government's Motion to Continue Trial and the proposed alternative methods of authenticating the video, should the Government offer any.

On December 10, 2011, the Government filed the instant "Motion in Limine Re: Admission of Video Recording." On December 11, 2011, Defendant filed an opposition to the Motion to Continue Trial, but did not file a brief addressing the alternative methods of authenticating the video proposed by the Government. At the December 12, 2011 hearing, after acknowledging that this Court's December 9, 2011 Order required her to file a brief addressing the alternative grounds proposed by the Government by 4 p.m. on December 11, 2011, counsel for Defendant asked for additional time to file a brief responding to the Government's arguments regarding authentication of the surveillance video. The Court continued the trial to Wednesday, December 14, 2011, in order to give the Defendant an opportunity to respond to the Government's motion, including the arguments presented at the hearing regarding authentication of the surveillance video. The Defendant was allowed until 10 a.m. on December 13, 2011,

3

within which to file his brief. The Defendant's brief was timely filed; and the Government filed a reply on the afternoon of December 13, 2011.

### B. The December 12, 2011 Hearing

At the December 12, 2011 hearing, the Government called four witnesses. The first witness was Valencia George, a forensic technician with the Virgin Islands Police Department ("VIPD"). George, who responded to one of the scenes of the alleged crime, provided extensive testimony regarding the video surveillance system installed at the Catherine's Rest Supermarket. Her testimony included confirmation that the recording system was functioning on the day of the alleged criminal activity and was recording events as they occurred. She also offered testimony that on August 19, 2011, she and Soto, another forensic technician, reviewed the surveillance footage and that Soto downloaded it to his laptop while she observed. The following day, Soto presented her with a CD, which she confirmed, based on her review, contained the same footage as she had reviewed the day before. She then turned the CD over to the VIPD property custodian. At the hearing, when presented with Government Exhibit 20A, George testified that it was the CD that she had received from Soto containing the surveillance footage. She further testified that she recognized the CD because she had written her initials and the word "original" on it.

The Court also heard testimony from Officer Robert Kressley, a forensic detective with the VIPD. He testified that he has thirty years of experience retrieving data from electronic devices and is familiar with both the surveillance equipment at the Catherine's Rest Supermarket and the technique used by Soto to retrieve the surveillance footage. Officer Kressley explained that on September 30, 2011, he retrieved the original CD containing the Catherine's Rest Supermarket surveillance footage from the VIPD property custodian and had it for

approximately thirty minutes so that he could "rip" a copy to his computer.[2]  Officer Kressley then made five "clips" from the surveillance footage—Government Exhibits 20B(1)-(5).  Officer Kressley explained that this process did not alter the original CD in any way.

VIPD Officer Uston Cornelius testified that he was called to the Catherine's Rest Supermarket on August 19, 2011, regarding a report of a stolen blue Jeep Compass.  When he arrived, he parked his car and went inside the store for several minutes to investigate.  He then left the store and got back into his car to speak with dispatch.  During his testimony, the Government played an approximately four-minute video clip, Government Exhibit 20B(3).  In that clip, a police car arrives at the Catherine's Rest Supermarket; an individual gets out of the police car and enters the store; and the same individual leaves the store and reenters the police car.  Officer Cornelius explained that he was the individual seen in the video and that it depicted what he remembers occurred on that day.  The Government moved for admission of the clip (Government Exhibit 20B(3)) into evidence.  After asking if there was any objection on authenticity grounds from the Defendant, and receiving none, the Court admitted the exhibit into evidence.

VIPD Officer Rollando Huertas testified that he and his partner were also called to the Catherine's Rest Supermarket to investigate a report of a stolen blue Jeep Compass on August 19, 2011.  After parking a few hundred yards north of the store, Officer Huertas observed a blue Jeep Compass drive into the parking lot in front of the store.  Officer Huertas drove toward the Compass and observed an individual exit the front passenger door of the Compass.  Officer Huertas then exited his vehicle with his gun drawn, and ordered both the driver of the Compass

---

[2] Cressley testified that to "rip" means to make an exact electronic duplicate of an original file.

and the individual who had just exited the Compass to stop.[3] The driver of the Compass "revved" the engine and sped away down the road. The individual who exited the Compass stopped momentarily, and then ran behind the store while grabbing toward his waist. Officer Huertas immediately began chasing the fleeing individual and saw that he had what appeared to be a gun in his hand. After firing twice and commanding the individual to lie down on the ground, Officer Huertas and another police officer were able to handcuff the individual and arrest him.

Officer Huertas identified the driver of the vehicle as Defendant Raheem Louis, whom he identified in the Courtroom, and the fleeing individual as Kareem Louis. After testifying about what occurred at the Catherine's Rest Supermarket, Officer Huertas was shown an approximately four-minute video, Government Exhibit 20B(5). Officer Huertas stated that the clip depicted exactly what occurred that day. The Government moved for admission of the clip (Government Exhibit 20B(5)) into evidence. After asking if there was any objection on authenticity grounds from the Defendant, and receiving none, the Court admitted the exhibit into evidence.

In addition to the two exhibits that were admitted into evidence with no objection as to authenticity by the Defendant, the Government also seeks to introduce three other clips that were not shown at the hearing and for which no witness who observed the events testified. Additionally, the Government seeks to introduce approximately thirty-two minutes of footage which extends considerably beyond the five clips that also was not shown at the hearing and for which no witness who observed the events testified. The Court ordered the Government produce

---

[3] Officer Huertas explained that he drew his gun because police dispatch had reported that the suspects who had stolen the blue Jeep Compass were armed.

to the Court and the Defendants these pieces of proffered evidence on December 13, 2011, and the Court had the opportunity to review these exhibits—Government Exhibits 20A and 20B(1), (2) & (4).

## II. DISCUSSION

### A. Applicable Legal Principles

Rule 901(a) states: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." "Rule 901(a) treats preliminary questions of authentication and identification as matters of conditional relevance according to the standards of Rule 104(b). The condition of fact which must be fulfilled by every offer of real proof is whether the evidence is what its proponent claims." *United States v. Reilly*, 33 F.3d 1396, 1404 (3d Cir. 1994) (citing 5 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence ¶ 901(a)[01] at 901–15 (1993)).

> [T]he burden of proof for authentication is slight . . . [T]he showing of authenticity is not on a par with more technical evidentiary rules, such as hearsay exceptions, governing admissibility. Rather, there need be only a *prima facie* showing, to the court, of authenticity, not a full argument on admissibility. Once a *prima facie* case is made, the evidence goes to the jury and it is the jury who will ultimately determine the authenticity of the evidence, not the court. The only requirement is that there has been substantial evidence from which they could infer that the document was authentic.

*Lexington Ins. Co. v. Western Pennsylvania Hosp.*, 423 F.3d 318, 328-29 (3d Cir. 2005) (citations omitted).

Video evidence may be properly authenticated if a witness with knowledge of the video testifies that the video is what its proponent claims it to be. *United States v. Goldin*, 311 F.3d 191, 197 (3d Cir. 2002) (finding that videotape was properly authenticated by camera operator);

*see also United States v. McNair*, 439 F. Supp. 103, 105 (E.D. Pa. 1977), *aff'd*, 571 F.2d 573 (3d Cir. 1977) (photographs authenticated by witness to the event). Thus, a video may be authenticated for the purpose of Rule 901 if a witness to an event testifies that a video accurately depicts the event.

Courts have also held that video evidence may be authenticated by testimony regarding "the type of equipment or camera used, its general reliability, the quality of the recorded product, the process by which it was focused, or the general reliability of the entire system." *United States v. Stephens*, 202 F. Supp. 2d 1361, 1368 (N.D. Ga. 2002); *see also United States v. Sivils*, 960 F.2d 587, 597 (6th Cir. 1992) (finding that district court did not abuse discretion in admitting audio tapes over authenticity objections when there was testimony regarding routine checks of the recording equipment by federal agents and chain of custody of tapes once recorded); *United States v. Rembert*, 863 F.2d 1023 (D.C. Cir. 1988) (finding that series of surveillance photographs taken by a closed-circuit video camera at an automatic teller machine were properly authenticated for purposes of an armed robbery trial, where the government introduced foundational testimony from a bank employee concerning the operation of the surveillance cameras, the loading of film, and the chain of custody). Thus, a party may authenticate video footage through different types of evidence—including that the recording equipment was accurate and that the chain of custody of the material was maintained; or by testimony from a witness that the footage depicts what they observed with their own senses; or by some combination thereof.[4]

---

[4] In his opposition to the Government's "Motion in Limine Re: Admission of Video Recording," Defendant argues that authentication of a video recording can be accomplished *only* by testimony from someone who actually witnessed the event. As discussed above, this is not an accurate statement of the law.

B. <u>Analysis</u>

Here, as detailed above, the Government presented considerable evidence regarding the type of equipment used to record the surveillance footage, the method used to retrieve that footage, and the chain of custody of the footage after it was retrieved.[5] It has also presented two witnesses who testified that approximately eight of the forty minutes of footage that the Government seeks to authenticate depicts events that they personally observed. *See* Government Exhibits 20B(3) & (5).

That said, the Court has viewed Government Exhibit 20A in its entirety and is concerned that portions of the video do not appear to comport with the testimony elicited by the Government that Exhibit 20A depicts the events occurring chronologically between 11:05 a.m. and 11:45 a.m. on August 19, 2011. The Government did not show Exhibit 20A at the hearing and thus did not solicit testimony to properly explain those portions. Accordingly, the Court will deny without prejudice the Government's request for an order declaring that Government Exhibit 20A is authentic within the meaning of Rule 901.

---

[5] Citing *United States v. Howard-Arias*, 679 F.2d 363 (4th Cir. 1982), Defendant claims that the Government has failed to prove chain of custody because it cannot account for the period after Soto retrieved the footage and the next morning when he produced a CD to George. However, in *Howard-Arias*, the Fourth Circuit explicitly found that a gap in the chain of custody was not fatal to authenticity: "Contrary to the appellant's assertion, precision in developing the "chain of custody" is not an iron-clad requirement, and the fact of a missing link does not prevent the admission of real evidence, so long as there is sufficient proof that the evidence is what it purports to be and has not been altered in any material aspect." *Id.* at 366 (citation omitted) (finding that district court did not abuse discretion in admitting marijuana into evidence over authenticity challenge when one of the agents involved in the transfer and testing of the marijuana did not testify at trial but four other witnesses in chain of custody did testify). Here, George testified that the footage on the CD provided to her by Soto was the same as the footage she reviewed the previous day. That is sufficient evidence to overcome Defendant's chain of custody challenge.

Regarding the three clips derived from Exhibit 20A that were not shown at the December 12, 2011 hearing, Government Exhibits 20B(1), (2), & (4), the Court declines to find at this time that the Government has shown that they satisfy Federal Rule of Evidence 901's authenticity requirement.  The Government urges that the Court may infer their authenticity from the evidence regarding the recording equipment, the retrieval of the video footage, the chain of custody of the footage once retrieved, and the testimony that the other video clips depict what actually occurred on August 19, 2011.  In view of the unexplained chronological irregularity in a portion of Exhibit 20A, the Court cannot depend on the technical reliability of the equipment and testimony regarding the retrieval process to authenticate the three clips derived from Exhibit 20A for which no corroborating testimony was presented.  Accordingly, the Court also declines to find that the Government has demonstrated the authenticity of these three clips.

### III.  **CONCLUSION**

For the foregoing reasons, the Court finds that Government Exhibits 20B(3) & (5) have been properly authenticated, but that Government Exhibits 20A and 20B(1), (2), & (4) have not. Accordingly, the Court denies without prejudice the Government's motion for an order finding that it has properly authenticated Government Exhibits 20A and 20B(1), (2), & (4).

Date: December 13, 2011      _____/s/_____
                             WILMA A. LEWIS
                             District Judge